## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| OMAR ZALDAÑA, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 20-3810 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| PATRICK FRANCIS MORROGH, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

## I. INTRODUCTION

Plaintiffs are seven former employees of District Anchor, a District of Columbia restaurant previously owned and operated by Defendants.  Plaintiffs seek relief from their former employers, alleging that they failed to pay Plaintiffs regular and minimum wages and failed to provide them safe and sick leave as required by law.  Plaintiffs bring their claims under the Fair Labor Standards Act, the D.C. Minimum Wage Revision Act, the D.C. Wage Payment and Collection Law, and the District of Columbia Accrued Safe and Sick Leave Act.  After Defendants failed to appear, file an answer, or otherwise respond to Plaintiffs' complaint, the Clerk's office entered a default against them.  Plaintiffs now move for a default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2) in the amount of $97,468.69, which is comprised of $13,096.60 in unpaid minimum and regular wages, $39,289.80 in liquidated damages, $4,030.80 in lost wages for unpaid safe and sick leave, $19,253.59 in statutory damages, $21,140.90 in attorneys' fees, and $657.00 in costs.  Because Plaintiffs have met their evidentiary burden, the Court grants their motion for a default judgment.  However, as explained below, the Court adjusts the damages award to correct several calculation errors.

Accordingly, judgment will be entered against Defendants in the amount of $76,977.91, plus an additional $21,797.90 in attorneys' fees and costs.

## II.  FACTUAL BACKGROUND[1]

Omar Zaldaña, Martha Orellana Portillo, Bertha Saravia, Jose Torres Saravia, Jose Guevara Alvarado, Marcos Tubac, and Lucrecia Cabrera Lopez (collectively, "Plaintiffs") sued Patrick Francis Morrogh and Paul John Kolokousis (collectively, "Defendants"), their former employers.  Plaintiffs were employed by District Anchor for varying periods of time between 2010 and March 2020.  Compl. ¶¶ 11, 24, 38, 52, 65, 79, 95, ECF No. 1.  During their employment, Plaintiffs worked in various capacities at District Anchor, including as cooks, kitchen laborers, dishwashers, and food runners.  *Id.* ¶¶ 12, 25, 39, 53, 66, 80, 96.

Defendant Morrogh is the owner and managing member of PFM Restaurants, LLC ("PFM"), which he established to operate District Anchor.  *Id.* ¶ 8.  Defendant Kolokousis is also an owner and member of PFM.  *Id.* ¶ 9.  Defendants each exercise control over PFM's operations, including its pay practices.  *Id.* ¶¶ 8–9.  Through PFM, Defendants owned and operated District Anchor together.  *Id.* ¶ 10.  Each had the authority to—and did in fact—hire and fire Plaintiffs, control Plaintiffs' work schedules, supervise Plaintiffs' work, and determine and execute Plaintiffs' compensation.  *Id.* ¶¶ 103–18.  At the start of the COVID-19 pandemic, Defendants fired Plaintiffs without notice.  *Id.* ¶ 1.  Plaintiffs filed a four-count complaint asserting several violations of their rights under D.C. and federal law.

---

[1] This factual background is based upon Plaintiffs' complaint, as well as detailed declarations and exhibits that Plaintiffs submitted in support of their motion for default judgment.  *See, e.g.*, *Warmbier v. Democratic People's Republic of Korea*, 356 F. Supp. 3d 30, 37 (D.D.C. 2018) (relying upon "detailed declarations submitted by plaintiffs in support of their motion for default judgment, as well as exhibits and testimony presented at an evidentiary hearing," to evaluate a default judgment motion).

Count I of Plaintiffs' complaint alleges that Defendants failed to pay them minimum wages under the federal Fair Labor Standards Act ("FLSA").  *Id.* ¶ 124–31.  The FLSA requires employers to pay non-exempt employees at least $7.25 per hour, 29 U.S.C. § 206(a)(1), and at least one and one-half times an employee's regular hourly rate for any hours worked over forty hours per week, *id.* § 207(a)(2).  Under the FLSA, state and local law may set a minimum wage higher than that provided by the Act.  29 U.S.C. § 218(a).  It follows that an employee's "regular hourly rate" must not be lower than the applicable state or local minimum rate.  29 C.F.R. § 778.5.  Plaintiffs were paid between $11.50 and $17.60 per hour during their employment. Compl. ¶¶ 15, 29, 43, 56, 70, 84, 99.  Plaintiffs claim that some of these rates fell below applicable D.C. minimum wage thresholds and that Defendants altogether failed to pay Plaintiffs wages for their last weeks of work.  *Id.* ¶ 2.  Thus, they allege that Defendants failed to "pay one or more Plaintiffs the required minimum wage."  *Id.* ¶ 129.

Count II alleges that Defendants failed to pay Plaintiffs minimum and regular wages under the D.C. Minimum Wage Act ("DCMWA").  *Id.* ¶ 132–36.  The DCMWA currently requires that employers pay hourly non-exempt employees $15.00 per hour.  D.C. Code § 32-1003(a)(5)(A)(v).  From July 1, 2017, to July 1, 2020, this rate increased in annual increments to $12.50, $13.25, $14.00, and $15.00, respectively.  *Id.* § 32-1003(a)(5)(A)(i)–(iv).  The DCMWA also provides that employees who work over 40 hours in any given week are entitled to compensation "at a rate not less than 1 1/2 times the regular rate at which the employee is employed."  *Id.* § 32-1003(c).  Plaintiff Tubac was paid $11.50 from December 1, 2017 through June 30, 2018, $12.50 from July 1, 2018 through June 30, 2019, $13.00 from July 1, 2019 through December 31, 2019, and $13.50 from January 1, 2020 through March 12, 2020.  Compl. ¶ 84.  Plaintiffs claim that these rates, as well as Defendants' failure to pay Plaintiffs anything at

all for their last weeks of regular and overtime hours worked, reflect Defendants' failure to "pay the required minimum wage to one or more Plaintiffs." *Id*. ¶ 135.

Count III alleges that Defendants failed to pay wages under the D.C. Wage Payment and Collection Law ("DCWPCL"). *Id*. ¶ 143. The DCWPCL requires employers to pay a discharged employee their wages "not later than the working day following such discharge." D.C. Code § 32-1303(1). Plaintiffs were never compensated for their last two to four weeks of work. *See* Compl. ¶¶ 17, 31, 45, 58, 72, 88, 101.

Count IV alleges that Defendants failed to provide Plaintiffs with paid safe and sick leave under the D.C. Accrued Sick and Safe Leave Act ("ASSLA"). *Id.* ¶ 149. The ASSLA requires employers to provide employees with paid safe and sick leave. D.C. Code § 32-531.02. The amount of paid leave an employee is entitled to depends on the size of the employer and the number of hours worked. *Id.* § 32-531.02(a).[2] All Plaintiffs—except for Plaintiff Cabrera Lopez—claim that Defendants denied them paid safe and sick leave "by not providing Plaintiffs the required paid leave."[3] Compl. ¶ 149; *see also id.* ¶¶ 22, 36, 50, 63, 77, 93.

Defendants were properly served but have failed to appear or file an answer since. *See* Summons, ECF No. 2; Aff. of Process Server ("Aff. of Process Server for Kolokousis"), ECF No. 3; Aff. of Process Server ("Aff. of Process Server for Morrogh"), ECF No. 4. On March 12, 2021, Plaintiffs filed an affidavit in support of default and requested the Clerk of Court to enter a

---

[2] Employers with 100 or more employees must provide at least one hour of paid leave for every thirty-seven hours worked; an employer with twenty-five to ninety-nine employees must provide at least one hour of paid leave for every forty-three hours worked; and an employer with twenty-four or fewer employees must provide at least one hour of paid leave for every eighty-seven hours worked. D.C. Code § 32-531.02(a).

[3] Plaintiff Cabrera Lopez was employed by District Anchor from February 1, 2020– March 13, 2020. Compl. ¶ 95. The ASSLA provides that "an employee may begin to access paid leave after 90 days of service with his or her employer." D.C. Code § 32-531.02(c)(1). As such, Plaintiff Cabrera Lopez is not entitled to paid safe and sick leave under the ASSLA.

default against Defendants.  Aff. in Supp. of Default, ECF No. 6.  Consequently, the Clerk

entered default against Defendants.  *See* Default, ECF No. 7; Default, ECF No. 8.  Plaintiffs now

move for a default judgment against Defendants pursuant to Federal Rule of Civil Procedure

55(b)(2).  Pls.' Mot. Default. J., ECF No. 9.  Defendants have failed to respond to both the

Clerk's default as well as Plaintiffs' Motion for Default Judgment.

### III.  LEGAL STANDARD

Plaintiffs seek a default judgment based on Defendants' failure to respond.  The Court

may enter a default judgment in accordance with Rule 55 of the Federal Rules of Civil

Procedure.  Default judgment is appropriate "when the defendant is an 'essentially unresponsive

party' whose default is 'plainly willful, reflected by its failure to respond to the summons or

complaint, the entry of default, or the motion for default judgment.'"  *Carazani v. Zegarra*, 972

F. Supp. 2d 1, 12 (D.D.C. 2013) (citation omitted).  The Court may enter a default judgment

when a defendant "makes no request 'to set aside the default'" and "gives no indication of a

'meritorious defense.'"  *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C.

2015) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531

F. Supp. 2d 56, 57 (D.D.C. 2008)); *see also Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v.

Artharee*, 942 F. Supp. 2d 27, 29–30 (D.D.C. 2013) (quoting *Auxier Drywall, LLC*, 531 F. Supp.

2d at 57)).

Although "[a] default judgment establishes the defaulting party's liability for every well-

plead[ed] allegation in the complaint," it "does not automatically establish liability in the amount

claimed by the plaintiff."  *PT (Persero) Merpati Nusantara Airlines v. Thirdstone Aircraft

Leasing Grp., Inc.*, 246 F.R.D. 17, 18 (D.D.C. 2007) (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15,

17 (D.D.C. 2001) and *Shepherd v. Am. Broad. Cos.*, 862 F. Supp. 486, 491 (D.D.C. 1994),

*vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995)); *see also* Fed. R. Civ. P. 55(b)(2).

Instead, "the Court is required to make an independent determination of the amount of damages

to be awarded, unless the amount of damages is certain." *Serv. Emps. Int'l Union*, 942 F. Supp.

2d at 30 (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*,

808 F. Supp. 2d 89, 94 (D.D.C. 2011)).  In doing so, a court need not conduct an evidentiary

hearing if it can establish a basis for the damages amount through detailed affidavits or other

documentary evidence.  *Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C.

2002); *see also Embassy of the Fed. Republic of Nigeria v. Ugwuonye*, 945 F. Supp. 2d 81, 85

(D.D.C. 2013).

## IV.  ANALYSIS

### A.  Liability

Where "there is a complete 'absence of any request to set aside the default or suggestion

by the defendant that it has a meritorious defense, it is clear that the standard for default

judgment has been satisfied.'" *Serv. Emps. Int'l Union*, 942 F. Supp. 2d at 29–30 (D.D.C. 2013)

(quoting *Auxier Drywall, LLC*, 531 F. Supp. 2d at 57).  Furthermore, "[a] default judgment

establishes the defaulting party's liability for every well-plead[ed] allegation in the complaint."

*PT (Persero) Merpati Nusantara Airlines*, 246 F.R.D. at 18.  Defendants were summoned on

December 28, 2020 and properly served by January 8, 2021.  *See* Summons; Aff. of Process

Server for Kolokousis; Aff. of Process Server for Morrogh.  Both have failed to respond to the

summons, complaint, entry of default, or motion for default judgment.  Accordingly, the Court

accepts Plaintiffs' well-pleaded allegations in the complaint and the statements in their affidavits

as true.  Moreover, Plaintiff's allegations, accepted as true, establish every element of each of

their claims.  The Court therefore finds that entering a default judgment against Defendants is appropriate and finds them to be jointly and severally liable.

First, Plaintiffs allege that Defendants are "employers" subject to FLSA, DCWPCL, DCMWA, and ASSLA[4] liability.  *See* Compl. ¶¶ 103–123, 125, 133, 139, 147; *see also* 29 U.S.C. § 203(d); D.C. Code §§ 32-1002(3), 32-1301(1B), 32-531.01(3)(A).  Factors relevant to whether an individual is an employer under the FLSA include whether the individual has the power to hire, fire, suspend, or otherwise discipline employees; supervises employees' work duties; and determines employees' rate and method of compensation.  *Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 26–27 (D.D.C 2014) ("At minimum, an individual who exercises operational control over an employee's wages, hours, and terms of employment qualifies as an 'employer,' and is subject to individual liability.") (citing *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 6 (D.D.C. 2010) ("*Ventura I*")); *see also Ventura I*, 738 F. Supp. 2d at 6 ("[B]ecause the DCWPCL is construed consistently with the FLSA, [Defendant] is an 'employer' under the DCWPCL and is liable for the corporate defendants' violations of its wage and overtime provisions.").  Here, Plaintiffs maintain that Defendants hired them, abruptly discharged them, managed and supervised their work schedules, and signed their paychecks.  Compl. ¶¶ 103–123.

---

[4] The Court notes that the ASSLA defines "employer" as "a legal entity (including a for-profit or nonprofit firm, partnership, proprietorship, sole proprietorship, limited liability company, association, or corporation), or any receiver or trustee of an entity (including the legal representative of a deceased individual or receiver or trustee of an individual), who directly or indirectly or through an agent or any other person, including through the services of a temporary services or staffing agency or similar entity, employs or exercises control over the wages, hours, or working conditions of an employee."  D.C. Code § 32-531.01(3)(A).  Arguably Defendants, as individuals, are not legal entities and therefore do not qualify as employers under this definition. *See Legal Entity*, *Black's Law Dictionary* (11th ed. 2019) (defining "legal entity" as "a body, other than a natural person . . . .").  However, Defendants do not raise this argument and therefore the Court need not address it.  *See Coulibaly v. Kerry*, 130 F. Supp. 3d 140, 150 n.10 (D.D.C. 2015).

Thus, they have sufficiently pleaded that Defendants were "employers" subject to liability under the statutes pursuant to which they bring their claims.

Second, Plaintiffs have alleged that they are "employees" under the applicable statutes. *See* Compl. ¶¶ 11, 24, 38, 52, 65, 79, 95.  Under the FLSA, "the term 'employee' means any individual employed by an employer" and "'[e]mploy' includes to suffer or permit to work."  29 U.S.C. § 203(e)(1), (g).  "Employee" is defined nearly identically under the DCMWA, DCWPCL, and ASSLA.  *See* D.C. Code § 32-1002(2) ("The term 'employee' includes any individual employed by an employer . . . ."); D.C. Code § 32-1301(2) ("'Employee' shall include any person suffered or permitted to work by an employer."); D.C. Code § 32-531.01(2) ("'Employee' means any individual employed by an employer . . . .").  To determine employment status under the FLSA, this Court employs the economic realities test, which "considers the extent to which typical employer prerogatives govern the relationship between the putative employer and employee."  *Gallagher v. Eat to the Beat, Inc.*, 480 F. Supp. 3d 79, 86 (D.D.C. 2020) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).  The following considerations inform the economic reality of an employer's relationship to an alleged employee:

> [W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, (4) maintained employment records . . . [as well as] [5] the degree of control exercised by the employer over the workers, [6] the workers' opportunity for profit or loss and their investment in the business, [7] the degree of skill and independent initiative required to perform the work, [8] the permanence or duration of the working relationship and [9] the extent to which the work is an integral part of the employer's business.

*Gallagher*, 480 F. Supp. 3d at 86 (citing *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001).  Here, Plaintiffs allege that they were hired and fired by Defendants,

Compl. ¶¶ 104, 110, 113–14, paid and supervised by Defendants, *id.* ¶¶ 107, 111, 115–118, and operated as the cooks, kitchen laborers, dishwashers, and food runners for Defendants' business. *Id.* ¶¶ 12, 25, 39, 53, 66, 80, 96.  These facts are sufficient to plead that Plaintiffs were Defendants' "employees."

With respect to the FLSA, Plaintiffs have alleged that they were "employees engaged in commerce" during their employment at District Anchor.  Compl. ¶ 122–123.  The provisions of the FLSA at issue here apply only to employees engaged in commerce.  *See* 29 U.S.C. § 206(a), 207(a).  Commerce is defined as "trade, . . . transportation, transmission, or communication among the several States or between any State and any place outside thereof."  *Id.* § 203(b).  Plaintiffs allege that "[a]t all relevant times, Defendants had two or more employees who handled goods and/or materials that had traveled in or been produced in interstate commerce . . . [and] had employees who handled food products . . . that had been raised or grown outside of the District of Columbia."  Compl. ¶ 122–123.  The Court finds that these facts constitute a sufficient pleading that Plaintiffs were employees engaged in commerce.

Lastly, all Plaintiffs have alleged that Defendants violated various provisions of the FLSA, DCMPWA, DCWPCL and ASSLA.  Both the FLSA and DCMWA require employers to pay employees a certain minimum wage and to compensate them at least one and one-half times an employee's regular hourly rate for hours worked over forty hours per week.  *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1); D.C. Code § 32-1003(a)(5)(A)(i)–(v), (c).  The DCWPCL requires employers to pay a discharged employee their wages "not later than the working day following such discharge."  D.C. Code § 32-1303(1).  Lastly, the ASSLA requires employers to provide employees with paid safe and sick leave.  D.C. Code § 32-531.02.  Plaintiffs have pleaded that Defendants violated these provisions by failing to compensate them entirely for several weeks of

work, to meet minimum wage standards, and to provide them with paid safe and sick leave. Compl. ¶¶ 2–3, 124–151. Their assertions are supported by detailed allegations that are fact-specific to each Plaintiff, *id.* ¶¶ 11–123, and are sufficient to plead Defendants' statutory violations.

Because Defendants have failed to respond to Plaintiffs' well-pleaded allegations of violations of the FLSA, DCMWA, DCWPCL, and ASSLA, as well as this Court's entry of default and Plaintiffs' motion for default judgment, Defendants are liable for these violations.

### B. Award of Damages

The Court now turns to determining the appropriate measure of damages. In doing so, it relies on detailed affidavits and other documentary evidence. Although Plaintiffs do not present official records documenting the exact hours they worked and amounts they were or were not paid, such as pay stubs or other records, "courts are reluctant to penalize plaintiffs without documentation in cases where employers have defaulted." *Reyes v. Kimuell*, 270 F. Supp. 3d 30, 34–35 (D.D.C. 2017) (citing *Martinez v. China Boy, Inc.*, 229 F. Supp. 3d 1, 3 (D.D.C. 2016)); *Encinas v. J.J. Drywall Corp.*, 840 F. Supp. 2d 6, 8 (D.D.C. 2012); *Arias v. U.S. Serv. Indus., Inc.*, 80 F.3d 509, 512 (D.C. Cir. 1996)). The Court therefore proceeds using Plaintiffs' recollections, as reflected in their respective declarations, which are "submitted under the penalty of perjury, as to the hours [they] worked and wages [they] received." *Martinez*, 229 F. Supp. 3d at 3 (relying on the plaintiff's declaration where the plaintiff "ha[d] not produced timesheets and the defendant ha[d] failed to respond"); *see also* Pls.' Mot. Default J., Ex. A–G.

Plaintiffs' claim for damages includes claims for unpaid regular, overtime, and minimum wages, liquidated damages, lost wages for unpaid safe and sick leave, attorneys' fees, and costs. Pls.' Mot. Default. J. at 6, 10. The Court addresses each in turn.

1. Regular and Overtime Wages Owed

Plaintiffs (other than Tubac) claim that they are entitled to $8,837.60 in unpaid regular and overtime wages.[5] *See id.* at 7.  The FLSA requires employers to pay non-exempt employees at least $7.25 per hour, 29 U.S.C. § 206(a)(1).  Under the FLSA, state and local laws may set a minimum wage higher than that provided by the Act, which becomes the operative FLSA minimum wage.  *Id.* § 218(a).  Accordingly, the relevant minimum standard is set by DCMWA's hourly wage rate, which from July 1, 2017 to July 1, 2020 increased in annual increments to $12.50, $13.25, $14.00, and $15.00, respectively.  *See* D.C. Code § 32-1003(a)(5)(A)(i)–(v).  In addition to its requirement of payment at a minimum regular hourly rate, the FLSA requires employers to pay at least one and one-half times an employee's regular hourly rate for any hours worked over forty hours per week.  29 U.S.C. § 207(a)(1).  The DCMWA similarly provides that employees be compensated "at a rate not less than 1 1/2 times the regular rate at which the employee is employed" for any hours worked beyond the 40-hour statutory maximum work week.  D.C. Code § 32-1003(c).  The DCWPCL also applies, as it provides for damages equal to an employee's unpaid wages.  *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 29–30 (D.D.C. 2010) ("*Ventura II*"); D.C. Code § 32-1303.

Affidavits from each Plaintiff set out their claimed hourly wages, as well as unpaid regular and overtime hours, which are summarized in the following chart:

| Plaintiff | Hourly Wages | Unpaid Regular Hours | Unpaid Overtime Hours | Total Unpaid Wages |
|---|---|---|---|---|
| **Zaldaña** | $17.60 | 126.00 | -- | $2,217.60 |
| **Orellana Portillo** | $14.00 | 85.00 | -- | $1,190.00 |

---

[5] Counsel for Plaintiffs calculates Plaintiff Tubac's owed wages separately because Defendants paid him a sub-minimum wage for the entirety of his employment. *See* Pls.' Mot. Default J. at 7.

| | | | | |
|---|---|---|---|---|
| **Saravia** | $14.00 | 160.00 | 2.00 | $2,282.00 |
| **Torres Saravia** | $14.00 | 52.00 | -- | $728.00 |
| **Guevara Alvarado** | $16.00 | 86.00 | 5.00 | $1,496.00 |
| **Cabrera Lopez** | $14.00 | 66.00 | -- | $924.00 |
| **Total** | -- | 575.00 | 7.00 | $8,837.60 |

The Court has examined Plaintiffs' affidavits, Pls.' Mot. Default J., Ex. A–G, and accompanying spreadsheets, Pls.' Mot. Default J., Ex. I, and agrees with their calculation of unpaid regular and overtime wages in the amount of $8,837.60, as apportioned in the above chart.

### 2. Minimum Wages Owed

Plaintiff Tubac claims that he is entitled to $4,259.00 in unpaid minimum wages. *See* Pls.' Mot. Default J. at 8. As discussed in the previous section, the FLSA and the DCMWA each require employers to pay non-exempt employees a certain minimum regular hourly rate. *See* 29 U.S.C. § 206(a)(1); D.C. Code § 32-1003(a)(5)(A)(v). To reiterate, under the FLSA, state and local laws may set a minimum wage higher than that provided by the Act, which becomes the operative FLSA minimum wage. *Id*. § 218(a). Accordingly, the relevant minimum standard at all relevant times was set by DCMWA's hourly wage rate, which from July 1, 2017 to July 1, 2020 increased in annual increments to $12.50, $13.25, $14.00, and $15.00, respectively. *See* D.C. Code § 32-1003(a)(5)(A)(ii)–(v).

The following chart summarizes Plaintiff Tubac's claimed hourly wages and unpaid minimum wages in relation to the applicable DCMWA minimum wage rate.[6] The Court corrects what appear to be three computational oversights regarding the minimum wage increase schedule

---

[6] Plaintiff Tubac does not claim to have worked overtime hours.

and Plaintiff's hourly wage increase schedule,[7] *see* Pls.' Mot. Default J., Ex. F, as well as a single error relating to the statute of limitations.[8]

| DCMWA Minimum Wage | Plaintiff Tubac's Hourly Wages | Hours Worked | Total Unpaid Wages |
| --- | --- | --- | --- |
| **$12.50 (July 01, 2017– June 30, 2018)** | $11.50 | 768 | $744.00 |
| **$13.25 (July 01, 2018– June 30, 2019)** | $12.50 | 1,432 | $1,074.00 |
| **$14.00 (July 01, 2019– June 30, 2012)** | $13.00 (through December 31, 2019) $13.50 (through March 14, 2020) | 1,020 | $2,387.00 |
| **Total** | | | $4,205.00 |

---

[7] For the period between June 24, 2018 to June 30, 2018, Plaintiff Tubac claims that the D.C. minimum hourly wage was $13.25, and calculates proper pay accordingly. However, the applicable D.C. minimum hourly wage remained $12.50 through June 30, 2018. Thus, the Court adjusts the amount owed during that time period from the purported $49.00 to $28.00. A similar correction is necessary for the time period of June 30, 2019 to July 06, 2019. Plaintiff sets the D.C. minimum hourly wage at $14.00 for the entirety of that period and lists Plaintiff's wage as $12.50. However, the $14.00 minimum wage did not come into effect until July 1, 2019, and Plaintiff's wage increased to $13.00 effective that day. Averaging the hours for the week over the seven days, the Court adjusts the amount owed during that period from the purported $42.00 to $27.00. Last, the Court adjusts the amount owed for the week of December 29, 2019 to January 4, 2020 from $14.00 to $20.00 because Plaintiff's actual wage changed from $13.00 to $13.50 on the fourth day of this week. Together, these adjustments account for $30.00 of the difference between the Plaintiff's requested amount and the Court's award.

[8] Plaintiff Tubac calculates his damages beginning on December 17, 2017. The statutes of limitation for Plaintiffs' FLSA and DCMWA "are two and three years respectively, though the limit under the FLSA is three years for willful violations." *Arencibia v. 2401 Restaurant Corp.*, 831 F. Supp. 2d 164, 168 n.2 (D.D.C. 2011) (citing 29 U.S.C. § 255(a) and D.C. Code § 12-301(8)); *Reyes*, 270 F. Supp. 3d at 35 (citing *Ventura II*, 738 F. Supp. 2d at 30); *see also Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 190 (D.D.C. 2016) ("[B]y virtue of their default, Defendants have forfeited any affirmative defense regarding willfulness under the FLSA."). Since his complaint was filed on December 23, 2020, he may only recover for claims that accrued beginning on December 23, 2017. Prorating the $28.00 claimed for the week of December 17 to December 23 across all seven days, the Court reduces Plaintiff Tubac's award by $24.00 to award damages only for the single day within the limitation period. Together with the $30.00 figure explained in Footnote 7, this reduction accounts for the $54.00 difference between Tubac's claimed damages ($4,259.00) and the Court's award ($4,205.00).

Except for these two computational errors, the Court agrees with Plaintiff Tubac's calculation and awards Plaintiff Tubac unpaid minimum wages in the amount of $4,205.00.

### 3.  Liquidated Damages

Plaintiffs claim that they are entitled to $39,289.80 in liquidated damages.  *See* Pls.' Mot. Default J. at 8.  Both the FLSA and District of Columbia law provide for liquidated damages in addition to recovery for unpaid wages.  *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and *in an additional equal amount* as liquidated damages." (emphasis added)); D.C. Code § 32-1012(b)(1) ("[A]ny employer who pays any employee less than the wage to which that employee is entitled under this subchapter shall be liable to that employee in the amount of the unpaid wages . . . *and an additional* amount as liquidated damages equal to treble the amount of unpaid wages." (emphasis added)); *id.* § 32-1303(4) ("If an employer fails to pay an employee wages earned as required . . . such employer shall pay, *or be additionally liable to*, the employee, as liquidated damages . . . ." (emphasis added)); *see also Barahona v. Rosales*, No. 15-1381, 2016 WL 11585399, at *1–2 (D.D.C. Sept. 26, 2016) (clarifying that liquidated damages under the DCWPCL and DCMWA are awarded in addition to actual damages).  The Court will, at Plaintiffs' request, assess liquidated damages under District of Columbia law, as it provides for more generous liquidated damages.  *See* Pls.' Mot. Default J. at 8; *cf. Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 122 (D.D.C. 2016) ("Because [D.C. law] provides for greater liquidated damages than the FLSA . . . the Court will first assess damages under D.C. law and will not award a duplicative amount pursuant to federal law." (quoting *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d at 104).

The DCWPCL calculates liquidated damages as "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller."[9]  D.C. Code § 32-1303(4).  The DCMWA calculates liquidated damages as "an additional amount . . . equal to the treble amount of unpaid wages."  *Id.* § 32-1012(b)(1).  Plaintiffs note that this Court has addressed "whether the unpaid wages should simply be multiplied by three . . . or instead multiplied by three (liquidated damages) and then added to the original amount (actual damages)" and concluded that liquidated damages under both statutes are properly calculated using the latter formulation.  *Barahona*, 2016 WL 11585399, at *1–2.  Using the same calculation, and accounting for Plaintiff's computational errors discussed in the previous section, the Court awards Plaintiffs liquidated damages in the sum of $39,127.80 as apportioned in the following chart:

| Plaintiff | Actual Damages from Unpaid Regular and Overtime Wages | Actual Damages from Unpaid Minimum Wages | Liquidated Damages (Actual Damages x3) |
|---|---|---|---|
| Zaldaña | $2,217.60 | - | $6,652.80 |
| Orellana Portillo | $1,190.00 | - | $3,570.00 |
| Saravia | $2,282.00 | - | $6,846.00 |
| Torres Saravia | $728.00 | - | $2,184.00 |
| Guevara Alvarado | $1,496.00 | - | $4,488.00 |
| Cabrera Lopez | $924.00 | - | $2,772.00 |
| Plaintiff Tubac | - | $4,205.00 | $12,615.00 |
| Total | $8,837.60 | $4,205.00 | **$39,127.80** |

---

[9] Plaintiffs calculate liquidated damages using only the treble unpaid wages amounts.  In any event, it appears to the Court that the treble amounts are less than the 10 per centum amounts and are therefore the correct measure of liquidated damages under the DCWPCL in this instance.

#### 4.  Lost Wages for Unpaid Safe and Sick Leave (ASSLA)

Plaintiffs claim that they are entitled to $4,030.80 in lost wages for unpaid safe and sick leave, as well as an additional $19,253.59 in statutory damages for unpaid safe and sick leave. *See* Pls' Mot. Default J. at 8–10.  The ASSLA requires an employer to provide its employees with one hour of paid leave for every certain number of hours worked.  D.C. Code § 32-531.02 (a)(1)–(3).  That number depends on the number of individuals employed by the establishment in question.  *Id*.  The following chart summarizes those categories:

| Size of Employer | Provision of Paid Leave | Maximum Provision Per Calendar Year |
| --- | --- | --- |
| 100 or more employees | 1 hour for every 37 hours worked | 7 days |
| 25 to 99 employees | 1 hour for every 43 hours worked | 5 days |
| 24 or fewer employees | 1 hour for every 87 hours worked | 3 days |

An employee accrues paid leave at the beginning of their employment but may only "begin to access paid leave after 90 days of service with [their] employer."  *Id*. § 32-531.02(c)(1).  An employer found to have violated the Act is liable to their employees in the form of "(1) Back pay for lost wages caused by the employer's violation . . . ; (2) Reinstatement or other injunctive relief; (3) Compensatory damages, punitive damages, and additional damages as provided in subsection (b) . . . ; and (4) Reasonable attorney's fees and costs."  *Id*. § 32-531.12(e).  Subsection (b) provides that an employer must pay "$500 in additional damages to the employee for each accrued day denied."  *Id*. § 32-531.12(b).  Thus, as Plaintiffs correctly point out, although "leave is accrued by the hour, the penalty is applied in terms of days."  Pls.' Mot. Default J. at 9.

Plaintiffs calculate their damages under ASSLA based on an accrual rate of one hour for every 87 hours worked.  *See* Pls.' Mot. Default J., Ex. I.  The Court has reviewed Plaintiffs'

affidavits and mostly agrees with their calculation of unpaid safe and sick leave under the

ASSLA.[10]  The following charts summarize[11] these calculations and adjust for slight errors:[12]

### Plaintiff Zaldaña

| Plaintiff Zaldaña (Total Lost Wages) | | | |
|---|---|---|---|
| **Hours Worked** | **Hours Earned (/87)** | **Hourly Wage** | **Amount Owed (Hours Earned x Hourly Wage)** |
| 6,686.00[13] | 76.85 | $17.60 | **$1,352.57** |

| Plaintiff Zaldaña (Sick Days Accrued Per Calendar Year) | | | | |
|---|---|---|---|---|
| | **Hours Worked** | **Hours Earned (/87)** | **Days Earned (/8 hour work day)** | **Additional Damages ($500.00/day of unoffered sick leave)** |
| **2017** | 2080.00 | 23.91 | 2.99 | $1,494.25 |
| **2018** | 2080.00 | 23.91 | 2.99 | $1,494.25 |
| **2019** | 2080.00 | 23.91 | 2.99 | $1,494.25 |
| **2020** | 446.00 | 5.13 | 0.64 | $320.40 |
| **Total** | 6,686.00 | | | **$4,803.16** |

**Total Damages for Plaintiff Zaldaña: $6,155.73**

---

[10] Plaintiffs Zaldaña, Orellana Portillo, Guevara Alvarado, and Tubac calculate damages under the ASSLA based on hours accrued before the three-year statute of limitations period. *See* D.C. Code § 32-531.10a ("All civil or administrative complaints brought under this subchapter shall be filed within 3 years of the event or final instance of a series of events on which the complaint is based . . . ."). Although the relevant three-year period from which this case was filed began on December 23, 2017, the Court assumes that for 2017, the "event" in question is the non-payment of unpaid accrued safe and sick leave at the end of the 2017 calendar year. Moreover, by virtue of their default, Defendants have not raised any counterarguments.

[11] Certain figures in the charts are rounded for presentation purposes, but the Court used unrounded figures at each step of the calculation to arrive at the totals.

[12] To calculate damages, Plaintiffs assume that the term "day" as used in D.C. Code § 32-351.09(b) constitutes an eight-hour workday. *See* Pls.' Mot. Default J. at 9. Plaintiffs also calculate damages under the ASSLA based on a five-day workweek.

[13] This figure relies on Plaintiffs' counsel's representation that Zaldaña worked 2,080 hours in 2017, even though Plaintiffs' counsel's spreadsheet only provides week-by-week entries delineating hours worked beginning in late 2017. Pls.' Mot. Default J., Ex. I at 2, 6. Zaldaña's affidavit states that the calculations accurately reflect his hours worked. Pls.' Mot. Default J., Ex. A at 2.

**Plaintiff Orellana Portillo**

| | Plaintiff Orellana Portillo (Total Lost Wages) | | | |
|---|---|---|---|---|
| | Hours Worked | Hours Earned (/87) | Hourly Wage | Amount Owed (Hours Earned x Hourly Wage) |
| | 2017–June 23, 2018 | | | |
| | 3,465.00[14] | 39.83 | $12.50 | $497.84 |
| | June 24, 2018–June 29, 2019 | | | |
| | 2,385.00 | 27.41 | $13.25 | $363.23 |
| | June 30, 2019–March 14, 2020 | | | |
| | 1,495.00 | 17.18 | $14.00 | $240.57 |
| Total | 7,345.00 | 58.56 | - | $1,101.64 |

| | Plaintiff Orellana Portillo (Sick Days Accrued Per Calendar Year) | | | |
|---|---|---|---|---|
| | Hours Worked | Hours Earned (/87) | Days Earned (/8 hour work day) | Additional Damages ($500.00/day of unoffered sick leave) |
| 2017 | 2340.00 | 26.90 | 3.40 | $1,681.03 |
| 2018 | 2340.00 | 26.90 | 3.40 | $1,681.03 |
| 2019 | 2340.00 | 26.90 | 3.40 | $1,681.03 |
| 2020 | 325.00 | 3.74 | 0.47 | $233.50 |
| Total | 7,345.00 | | | $5,276.58 |

**Total Damages for Plaintiff Orellana Portillo: $6,378.22**

**Plaintiff Saravia**

| | Plaintiff Saravia (Total Lost Wages) | | | |
|---|---|---|---|---|
| | Hours Worked | Hours Earned (/87) | Hourly Wage | Amount Owed (Hours Earned x Hourly Wage) |
| | January 27, 2019–June 29, 2019 | | | |
| | 891.00 | 10.24 | $13.25 | $135.70 |
| | June 30, 2019–March 14, 2020 | | | |
| | 1,498.50 | 17.22 | $14.00 | $241.14 |
| Total | 2,389.50 | | - | $376.84 |

| Plaintiff Saravia (Sick Days Accrued Per Calendar Year) |
|---|

---

[14] This figure relies on Plaintiffs' counsel's representation that Orellana Portillo worked 2,340 hours in 2017, even though Plaintiffs' counsel's spreadsheet only provides week-by-week entries delineating hours worked beginning in late 2017. Pls.' Mot. Default J., Ex. I at 7, 11. Orellana Portillo's affidavit states that the calculations accurately reflect her hours worked. Pls.' Mot. Default J., Ex. B at 2.

|  | Hours Worked | Hours Earned (/87) | Days Earned (/8 hour work day) | Additional Damages ($500.00/day of unoffered sick leave) |
|---|---|---|---|---|
| 2019 | 1,944.00 | 22.34 | 2.79 | $1,396.55 |
| 2020 | 445.50 | 5.12 | 0.64 | $320.04 |
| Total | 2,389.50 | 27.46 | 3.43 | **$1,716.59** |

**Total Damages for Plaintiff Saravia: $2,093.43**

### Plaintiff Torres Saravia

| Plaintiff Torres Saravia (Total Lost Wages) | | | |
|---|---|---|---|
| Hours Worked | Hours Earned (/87) | Hourly Wage | Amount Owed (Hours Earned x Hourly Wage) |
| 1,179.00 | 13.55 | $14.00 | **$189.72** |

| Plaintiff Saravia (Sick Days Accrued Per Calendar Year) | | | | |
|---|---|---|---|---|
|  | Hours Worked | Hours Earned (/87) | Days Earned (/8 hour work day) | Additional Damages ($500.00/day of unoffered sick leave) |
| 2019 | 920.00 | 10.57 | 1.32 | $660.92 |
| 2020 | 259.00 | 2.98 | 0.37 | $186.06 |
| Total | 1,179.00 | 13.55 | 1.69 | **$846.98** |

**Total Damages for Plaintiff Torres Saravia: $1,036.70**

### Plaintiff Guevara Alvarado

| Plaintiff Guevara Alvarado (Total Lost Wages) | | | |
|---|---|---|---|
|  | Hours Worked | Hours Earned (/87) | Hourly Wage | Amount Owed (Hours Earned x Hourly Wage) |
| | 2017–October 26, 2019 | | | |
| | 6247.50[15] | 71.81 | $15.00 | $1077.16 |
| | October 27, 2019–March 21, 2020 | | | |
| | 856.00 | 9.84 | $16.00 | $157.43 |
| Total | 7,103.5 | 81.65 | - | **$1234.59** |

---

[15] This figure relies on Plaintiffs' counsel's representation that Guevera Alvarado worked 2,210 hours in 2017, even though Plaintiffs' counsel's spreadsheet only provides week-by-week entries delineating hours worked beginning in late 2017. Pls.' Mot. Default J., Ex. I at 18, 22. Zaldaña's affidavit states that the calculations accurately reflect his hours worked. Pls.' Mot. Default J., Ex. E at 2.

| | Plaintiff Guevara Alvarado (Sick Days Accrued Per Calendar Year) | | | |
|---|---|---|---|---|
| | Hours Worked | Hours Earned (/87) | Days Earned (/8 hour work day) | Additional Damages ($500.00/day of unoffered sick leave) |
| 2017 | 2210.00 | 25.40 | 3.18 | $1,587.64 |
| 2018 | 2210.00 | 25.40 | 3.18 | $1,587.64 |
| 2019 | 2210.00 | 25.40 | 3.18 | $1,587.64 |
| 2020 | 473.50 | 5.44 | 0.68 | $340.16 |
| Total | 7,103.50 | 81.64 | 9.68 | $5,103.09 |

Total Damages for Plaintiff Guevara Alvarado: $6,337.68

**Plaintiff Tubac**

| | Plaintiff Tubac (Total Lost Wages)[16] | | | |
|---|---|---|---|---|
| | Hours Worked | Hours Earned (/87) | Hourly Wage | Amount Owed (Hours Earned x Hourly Wage) |
| | December 17, 2017–June 30, 2018 | | | |
| | 768.00 | 8.83 | $12.50 | $110.34 |
| | July 01, 2018–June 30, 2019 | | | |
| | 1,436.00 | 16.50 | $13.25 | $218.70 |
| | July 01, 2019–March 14, 2020 | | | |
| | 1,016.00 | 11.68 | $14.00 | $163.49 |
| Total | 3,220.00 | 37.01 | - | $492.53 |

| | Plaintiff Tubac (Sick Days Accrued Per Calendar Year) | | | |
|---|---|---|---|---|
| | Hours Worked | Hours Earned (/87) | Days Earned (/8 hour work day) | Additional Damages ($500.00/day of unoffered sick leave) |
| 2017 | 56.00 | 0.64 | 0.08 | $40.22 |
| 2018 | 1,432.00 | 16.46 | 2.06 | $1,028.74 |
| 2019 | 1,432.00 | 16.46 | 2.06 | $1,028.74 |
| 2020 | 300.00 | 3.45 | 0.43 | $215.52 |
| Total | 3,220.00 | 37.01 | 4.63 | $2,313.22 |

Total Damages for Plaintiff Tubac: $2,805.75

---

[16] Plaintiff Tubac's unpaid wages are calculated using the mandatory minimum wages at all relevant times as required by the DCMWA.

Based on these adjustments, the Court therefore awards Plaintiffs $24,807.51 in lost wages and statutory damages for unpaid safe and sick leave under the ASSLA, as apportioned in the above charts.

### 5. Attorneys' Fees and Costs

Plaintiffs claim that they are entitled to $21,140.90 in attorneys' fees and $657.00 in costs. *See* Pls' Mot. Default J. at 10. The FLSA, DCWPCL, and ASSLA, all require that a prevailing plaintiff receive an attorneys' fee award. 29 U.S.C. § 216(b); D.C. Code § 32-1308(b); D.C. Code § 32-531.12(e)(4). A "reasonable" fee is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Reyes*, 270 F. Supp. 3d at 38 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

First, the Court considers whether counsel has billed for a reasonable number of hours. *See id.* at 37. Plaintiffs bear the burden of establishing the reasonableness of the hours they seek for reimbursement. *Herrera v. Mitch O'Hara, LLC*, 257 F. Supp. 3d 37, 46–47 (D.D.C. 2017) (citing *In re N. (Bush Fee Application)*, 59 F.3d 184, 189 (D.C. Cir. 1995)). Factors relevant to this determination include counsel's time expenditure per task, rate of success in their motions, and whether counsel has avoided billing for duplicative efforts. *See Reyes*, 270 F. Supp. 3d at 37–38. Plaintiffs' counsel submitted detailed billing records. *See* Pls.' Mot. Default J., Ex. J, K. The Court has evaluated these records and concludes that the hours billed by counsel were reasonable in light of the factors discussed.

Next, the Court considers whether counsel billed a reasonable hourly rate. *Reyes*, 270 F. Supp. 3d at 38. The billing records demonstrate that Mr. Zelikovitz and his team billed at hourly rates ranging from $206.00 to $759.00 per hour. Pls.' Mot. Default J., Ex. J. Plaintiffs support these rates using the LSI *Laffey* matrix, *id*, a fee schedule that "sets forth the reasonable range of attorneys' rates based on the respective attorney's level of experience" for attorneys in the

District of Columbia.  *Reyes*, 270 F. Supp. 3d at 38 (quoting *Ventura*, 738 F. Supp. 2d 8, 34).

However, while "[s]everal matrices, including the USAO *Laffey* matrix and the LSI *Laffey*

matrix may assist courts in determining a reasonable hourly rate,"[17] *id.*, "[a] fee applicant does

not meet its burden merely by submitting the USAO or LSI *Laffey* Matrices with a fee

application.  Rather, the applicant is obliged to demonstrate that the suggested rates in the matrix

are in line with those prevailing in the community for similar services."  *Serrano*, 209 F. Supp.

3d at 195 (cleaned up).  Although the D.C. Circuit has acknowledged the inherent difficulty of

determining a prevailing market rate, *see Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C.

Cir. 2015), "a party may face a lower burden to justify the application of *Laffey* rates unless their

opponent identifies 'a submarket in which attorneys' hourly fees are generally lower than the

rates in . . . the *Laffey* Matrices,'" *Serrano*, 209 F. Supp. at 195 (quoting *Salazar ex rel. Salazar*

*v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015)).  Because Defendants are in default,

they have not identified the subject of this litigation as one such submarket.  Furthermore, this

Court "need not face the difficult question of the quantum and quality of evidence needed to

justify LSI *Laffey* rates . . . because D.C. law itself mandates that the Court use LSI *Laffey* rates."

*Serrano*, 209 F. Supp. at 197.  The DCMWA provides:

> In any judgment in favor of any employee under this section, and in any
> proceeding to enforce such a judgment, the court shall award to each attorney for
> the employee an additional judgment for costs, including attorney's fees

---

[17] The LSI *Laffey* matrix provides that a lawyer with 11–19 years of experience may have billed $759 between June 1, 2020 and May 31, 2021; the USAO *Laffey* matrix provides that a lawyer with 11–15 years of experience may have billed $532—and a lawyer with 16–20 years of experience $591—within the same time period.  LSI *Laffey* Matrix, http://www.laffeymatrix.com/see.html; (last visited Jan. 20, 2022); USAO *Laffey* Matrix, https://www.justice.gov/file/1461316/download (last visited Jan. 20, 2022).  The LSI *Laffey* matrix also provides that a paralegal or law clerk could bill $206 during that period, and the USAO *Laffey* matrix provides such a paralegal or law clerk could bill $180.  LSI *Laffey* Matrix, http://www.laffeymatrix.com/see.html (last visited Jan. 20, 2022); USAO *Laffey* Matrix, https://www.justice.gov/usao-dc/page/file/1305941/download, (last visited Jan. 20, 2022).

> computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123
> F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly
> rates for attorney's services.  The court shall use the rates in effect at the time the
> determination is made.

D.C. Code § 32-1308(b)(1).  As such, the Court finds Plaintiffs' requested LSI *Laffey* rates to be

appropriate and reasonable in this case.  The Court will therefore award Plaintiffs $21,140.90 in

attorneys' fees.

Lastly, Plaintiffs request that the Court reimburse them for $657.00 in costs, including

their filing fee and services of process.  Pls.' Mot. Default J., Ex. K.  The Court finds that these

costs are reasonable and compensable under the FLSA and the DCMWA.  *See* 29 U.S.C. §

216(b) ("The court in such an action shall . . . allow . . . [an award of] costs of the action."); D.C.

Code § 32-1311(c) ("The court shall have jurisdiction to . . . order all appropriate relief,

including . . . costs . . . .").  Accordingly, the Court awards Plaintiffs $657.00 per their request.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is **GRANTED**.  An

order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  01/24/2022                                           RUDOLPH CONTRERAS
                                                            United States District Judge